State of Idaho
## DEPARTMENT OF INSURANCE

*BRAD LITTLE*
*Governor*

*700 West State Street, 3rd Floor*
*P.O. Box 83720*
*Boise, Idaho 83720-0043*
*Phone (208) 334-4250    Fax (208) 334-4298*
*http://www.doi.idaho.gov*

*DEAN L. CAMERON*
*Director*

**To:**   MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY
ATTN: MICHAEL H. LANZA
40 WANTAGE AVENUE
BRANCHVILLE, NJ 07890

RECEIVED

SEP 1 6 2019

SELECTIVE CORP. LEGAL DEPT.

**CC:**   Plaintiff's counsel (w/o Enclosures) via First Class Mail

**From:** Idaho Department of Insurance

**Date:** 9/10/2019

**Re:**   NOTICE OF SUMMONS AND COMPLAINT AND DEMAND FOR JURY TRIAL OF
THE SIXTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE
COUNTY OF BANNOCK CASE NO. CV 03-19-03319.

BIG BAM VAPES LLC, EVAPORATED TECHNOLOGIES LLC, and LOGAN CHECKETTS
v MESA UNDERWRITERS SPECIALTY INS CO, et al

---

YOU WILL PLEASE TAKE NOTICE that a due and regular service of a SUMMONS
AND COMPLAINT AND DEMAND FOR JURY TRIAL, in connection with the above-entitled
action, was made upon you by CERTIFIED MAIL on the NINTH day of SEPTEMBER, 2019, by
delivering in Boise, Idaho, on the said date to the Director of the Department of Insurance, State
of Idaho, who is the duly and regularly appointed Statutory Agent. A copy of each instrument is
enclosed herewith to you as provided by law.

IN WITNESS WHEREOF, I have hereunto set my hand and the official seal of this office
at Boise, Idaho, this TENTH day of SEPTEMBER, 2019.

*Dean L. Cameron* /pm
Dean L. Cameron
Director
Department of Insurance
State of Idaho

Electronically Filed
9/4/2019 7:49 AM
Sixth Judicial District, Bannock County
Jason Dixon, Clerk of the Court
By: Kris Edwards, Deputy Clerk

Blake S. Atkin #6903
ATKIN LAW OFFICES, P.C.
7579 North West Side Highway
Clifton, Idaho  83228
Telephone: (801) 533-0300
Facsimile: (801) 533-0380
Email: batkin@atkinlawoffices.net

*Attorneys for Plaintiffs*

RECEIVED

SEP 1 6 2019

SELECTIVE CORP. LEGAL DEPT.

IN THE DISTRICT COURT OF THE SIXTH JUDICIAL DISTRICT OF THE
STATE OF IDAHO IN AND FOR THE COUNTY OF BANNOCK

| | |
|---|---|
| Big Bam Vapes, LLC, Evaporated Technologies, LLC, and Logan Checketts, <br><br> Plaintiffs, <br><br> v. <br><br> Mesa Underwriters Specialty Insurance Company, Big Sky Underwriters, a division of Hull and Company, <br><br> Defendants. | **COMPLAINT** <br><br> Case No. ___CV03-19-03319___ <br><br> Judge: ___Dunn, Stephen S.___ <br><br><br> **JURY TRIAL DEMAND** |

Plaintiffs complain of Defendants and allege as follows:

Parties

1. Plaintiff Big Bam Vapes, LLP is an Idaho limited liability partnership that ran an ejuice
   company located at 240 South Yellowstone Avenue, Pocatello, Idaho.

2. Plaintiff Logan Checketts is an Idaho resident who through various business entities
   which he controlled held an insurable interest in Big Bam Vapes, LLP.

3. Plaintiff Evaporated Technologies, LLC is an Idaho limited liability company who
   purchased the e-juice business from Big Bam Vapes, LLP.

4. Defendant Mesa Underwriters Specialty Insurance Company is a New Jersey corporation doing business and selling liability insurance in the state of Idaho.

5. Defendant Big Sky Underwriters is a Montana corporation that brokers liability insurance for various insurance companies including Defendant Mesa Underwriters Specialty Insurance Company in the State of Idaho.

## FACTS

6. In recent years, some smokers have begun replacing traditional cigarettes with devices that electrically atomize what is known as "ejuice".

7. Plaintiff Big Bam Vapes, LLP operated an ejuice business known as Evaporated LLP.  The business was located at 240 South Yellowstone Avenue in Pocatello, Idaho.

8. Big Bam Vapes, LLP purchased liability insurance from Defendants.  Plaintiff Logan Checketts, who through mesne companies had an insurable interest in Big Bam Vapes, LLP specifically inquired of the defendants whether liability of the ejuice business were covered under the purchased insurance policy.

9. He received a written response that "the ejuice portion of your business is covered for liability and property coverage."

10. Thereafter, Big Bam Vapes LLP sold the ejuice business to Evaporated Technologies, LLC.   Upon purchase, without letting the insurance coverage lapse, Evaporated Technologies LLC purchased and was issued the identical insurance policy that had been issued to its predecessor, Big Bam Vapes, LLP.

11. During the policy period, a customer, Anthony Hall purchased from Big Bam Vapes, LLP an ejuice device and various other ejuice products including batteries, and a battery charger.

12. During the policy period the same customer, Anthony Hall purchased from Evaporated Technology, LLC a replacement battery for the ejuice device and various other ejuice products including replacement coils and cotton wadding.

13. During the policy period, the replacement battery exploded doing extensive damage to Mr. Hall's face and mouth.

14. In 2017, Anthony Hall and his wife sued Logan Checketts, Big Bam Vapes, LLP, and Evaporated Technologies, LLC for damages including medical bills, loss of consortium and general damages. That action is pending in the District Court of the Sixth Judicial District of the State of Idaho in and for the County of Bannock, Case No. CV-2017-4674-PI. A true and correct copy of the Complaint is attached as Exhibit "A".

15. Upon receipt of the complaint, Plaintiffs tendered the defense of the Hall action to Defendants.

16. Defendants denied coverage and refused to defend the Plaintiffs' taking the position that liability was excluded on the ground that the ejuice products sold by this store are excluded under a "Products-completed operations hazard" exclusion.

17. On January 15, 2018, counsel for the Plaintiffs wrote to Defendants pointing out the fallacy in their reasoning given the written acknowledgment by the underwriter that "the ejuice portion of your business is covered for liability and property coverage."

18. That letter urged the Defendants to reverse their prior erroneous denial of coverage.

19. That letter again tendered the defense of the Hall action to the Defendants.

20. Despite that letter fully informing the Defendants of their duties under Idaho law to provide a defense to the Plaintiffs, Defendants refused to concede coverage and even denied any duty to defend the Hall action.

First Cause of Action

(For a declaration that Defendants owe coverage and a duty to defend.)

21. Plaintiffs repeat and incorporate by reference as if fully set forth herein the prior paragraphs of this complaint.

22. Plaintiffs have been aggrieved by the breach of contract of the Defendants in refusing to recognize coverage of the claims in the Hall action and in refusing to provide the defense to the Hall action.

23. Under Idaho Code Section 10-1202 "Any person interested under a . . . written contract or other writings constituting a contract or any oral contract, . . . may have determined any question of construction or validity arising under the instrument, . . . contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

24. When Plaintiffs first purchased coverage from defendants they specifically inquired into whether the ejuice portion of the business was covered under the policy.

25. Kim Miller, underwriter for Big Sky confirmed that "the ejuice portion of your business is covered for liability and property coverage." A copy of the letter from the insurance agent relaying this information to Plaintiffs is attached as Exhibit "B".

26. After receiving this assurance, Plaintiffs continued making premium payments and indeed ordered new and identical policies of insurance from Defendants.

27. This clear statement by Defendants' underwriter created a clear expectation on the part of Plaintiffs who purchased identical policies that their products, "the ejuice portion of their business" was covered.

28. Defendants had a duty to provide Plaintiffs with the type of insurance that the correspondence with its agent indicated Plaintiffs were seeking.

29. If Defendants were negligent in failing to provide that coverage Defendants are liable in tort to Plaintiffs for that failure.

30. Plaintiffs are entitled to a declaration that Defendants have a duty to indemnify Plaintiffs for the damages that are sought and may recovered in the Hall action.

31. Plaintiffs are entitled to a declaration that Defendants have a duty to defend Plaintiffs in the Hall action through counsel of the Plaintiffs' choice.

Second Cause of Action

(Bad faith refusal to defend)

32. Plaintiffs repeat and incorporate by reference as if fully set forth herein the prior paragraphs of this complaint.

33. In their contract with the Plaintiffs, Defendants agreed to defend Plaintiffs in any claims made.

34. When Plaintiffs first purchased coverage from Defendants they specifically inquired into whether the ejuice portion of the business was covered under the policy.

35. Kim Miller, underwriter for Big Sky confirmed that "the ejuice portion of your business is covered for liability and property coverage." A copy of the letter from the insurance agent relaying this information to plaintiffs is attached as Exhibit "B".

36. After receiving this assurance, Plaintiffs continued making premium payments and indeed ordered new and identical policies of insurance from defendants.

37. This clear statement by Defendants' underwriter created a clear expectation on the part of Plaintiffs who purchased identical policies that their products, "the ejuice portion of their business" was covered.

38. As a result of the breach by Defendants, Plaintiffs have been required to obtain the services of a lawyer and have incurred attorney fees that it was the responsibility of Defendants to pay in an amount and value to be proven at trial.

39. Plaintiffs reserve the right to assert a punitive damages claim pursuant to Idaho Code Section 6-1604 at the appropriate time.

Wherefore, Plaintiffs pray for judgment as follows:

On their first cause of action a declaratory judgment that Defendants, has a duty to defend and indemnify Plaintiffs in the Hall lawsuit.

On their second cause of action judgment in an amount to be proved at trial for the amounts Plaintiffs have spent in attorney fees in defending the Hall lawsuit and additional amounts for damages stemming from Defendants' bad faith in refusing to perform their contractual and insurance duties to the Plaintiffs.

Dated this 4th day of September, 2019.

/s/ Blake S. Atkin
_____

Blake S. Atkin
Attorney for Plaintiffs

**JURY TRIAL DEMANDED**

Exhibit A

Brent O. Roche (ISB#2627)
Nolan E. Wittrock (ISB#8969)
RACINE, OLSON, NYE &
BUDGE, Chartered
P. O. Box 1391
Pocatello, Idaho 83204-1391
Telephone:  (208) 232-6101
Fax:  (208) 232-6109

STEPHEN S. DUNN

*Attorneys for Plaintiff*

IN THE DISTRICT COURT OF THE SIXTH JUDICIAL DISTRICT OF THE
STATE OF IDAHO IN AND FOR THE COUNTY OF BANNOCK

| | |
|---|---|
| ANDREW HALL and AIRELLE HALL, Husband and Wife,<br><br>Plaintiffs,<br>v.<br><br>LOGAN CHECKETTS, formerly doing business as Evaporated, EVAPORATED TECHNOLOGIES, LLC, an Idaho Limited Liability Company, LG CHEM, LTD, a foreign company, INNOTEL, INC., a California corporation, and OUTLAW VAPOR, LLC, an Idaho Limited Liability Company,<br><br>Defendants. | Case No. CV-2017-4676-PI<br><br>**COMPLAINT and DEMAND FOR JURY TRIAL** |

Plaintiffs, Andrew Hall and Airelle Hall, through counsel and in support of their causes

of action against Defendants, state and allege as follows:

### PARTIES

1.     Plaintiffs Andrew Hall and Airelle Hall ("Halls") are married, with three children.

They and their children reside in Pocatello, Bannock County, Idaho.

2.     Defendant Logan Checketts ("Checketts") resides in Dayton, Franklin County,

Idaho.

COMPLAINT and DEMAND FOR JURY TRIAL - 1

3.     Defendant EVAPORATED TECHNOLOGIES, LLC, ("Evaporated Tech") is an Idaho limited liability company based in Pocatello, Idaho.

4.     Defendant LG CHEM, LTD, ("LG") is a foreign company organized and existing under the laws of South Korea, with its principal place of business in Seoul, South Korea.

5.     Defendant INNOTEL, INC. ("Innotel"), is a California corporation headquartered in Los Angeles, California.

6.     Defendant OUTLAW VAPOR, LLC ("Outlaw Vapor"), is an Idaho limited liability company based in Pocatello, Idaho.

## JURISDICTION/VENUE

7.     At pertinent times Checketts owned and operated multiple e-cigarette stores, also known as vape shops, including one located at 245 Yellowstone Avenue in Pocatello, Idaho. Checketts operated the vape shops under the assumed name of Evaporated.

8.     During Checketts' ownership of Evaporated he employed individuals to design, engineer and manufacture mechanical vaping mods, including the Sleeper V2 model.  Such design and manufacturing occurred at his vape shop located at 245 Yellowstone Avenue in Pocatello, Idaho. The Sleeper V2 mechanical mod was designed to house and activate a single 18650 lithium-ion rechargeable battery and to be connected to an atomizer powered by electrical current from the battery contained in the mechanical mod.  Checketts also employed individuals to operate his retail vape shops where e-cigarettes and vaping devices, and their component parts and accessories, were sold and serviced.

9.     Evaporated Tech or its principal owner, Jeff Garcia, purchased Checketts' vape shop located at 245 Yellowstone Avenue in Pocatello, Idaho in July 2016 and at all times thereafter has conducted business as a retail vape shop.

10.      LG is in the business of designing, manufacturing and selling numerous electrical products, including lithium-ion batteries for various purposes.

11.      LG has continuing contacts with Idaho by transacting substantial business in this state and manufacturing, distributing, and/or selling goods with the reasonable expectation that they will be used in this state and which are in fact used in this state.

12.      Innotel conducts business under the assumed names of Infeeling USA and Pro Vape Wholesale.  Innotel is in the business of importing into the United States vaping devices and accessories, including lithium-ion rechargeable batteries, for sale and distribution to retail vape shops throughout the United States, including those located in Idaho.

13.      Innotel has continuing contacts with Idaho by transacting substantial business in this state and distributing and/or selling goods with the reasonable expectation that they will be used in this state and which are in fact used in this state.

14.      Outlaw Vapor owns and operates multiple retail vape shops where e-cigarettes and vaping devices, and their component parts and accessories, are sold and serviced.   It also offers and sells its merchandise to other retail vape shops.

15.      Every cause of action alleged against these defendants arises out of a battery/vaping device explosion in Bannock County, Idaho on January 14, 2017 that seriously injured Mr. Hall.

16.      Mr. Hall purchased and took delivery of the defective products while located in Bannock County, Idaho.

17.      This action seeks monetary relief in an amount that exceeds the court's minimum threshold.

18.    Venue is proper as the most substantial part of the events or omissions giving rise to this claim occurred in Bannock County, Idaho.

## FACTUAL ALLEGATIONS

19.    On December 19, 2015 Mr. Hall entered Checketts' vape shop located at 245 Yellowstone Avenue in Pocatello, Idaho to shop for an e-cigarette or other vaping device. After discussing the various products carried in the store with the sales staff and after considering their recommendations, Mr. Hall purchased a Sleeper V2 mechanical mod, with Serial Number 292, a re-buildable atomizer, two IMREN 18650 lithium-ion rechargeable batteries and a battery charger.

20.    From December 20, 2015 through January 13, 2017 Mr. Hall typically used the vaping device three or four times each day without incident. Each evening Mr. Hall used his charger to fully recharge the battery used in his vaping device that day. He then removed the recharged battery from the charger before going to bed each night.

21.    From time to time Mr. Hall returned to Checketts' vape shop located at 245 Yellowstone Avenue, Pocatello, Idaho to purchase replacement parts and supplies for his vaping device. Such included purchase of replacement 18650 lithium-ion rechargeable batteries, coils for the re-buildable atomizer and e-liquids.

22.    On September 27, 2016 Mr. Hall entered Evaporated Tech's vape shop located at 245 Yellowstone Avenue, Pocatello, Idaho to purchase a replacement rechargeable battery for use with his Sleeper V2 mechanical mod and the re-buildable atomizer he had purchased earlier from the same vape shop, then owned by Checketts. Following the recommendations of Evaporated Tech's salesman, Mr. Hall purchased a LG HG2 18650 3000 mAh, 35 amp lithium-ion rechargeable battery ("the incident battery" or "the subject battery").

23.     From September 28, 2016 through January 13, 2017 Mr. Hall typically used the vaping device, including the LG HG2 18650 lithium-ion battery, three or four times each day without incident.  Each evening Mr. Hall used his charger to fully recharge the LG HG2 18650 lithium-ion battery used in his vaping device that day.  He then removed the recharged battery from the charger before going to bed each night.

24.     On the morning of January 14, 2017 Mr. Hall prepared to use his vaping device at his home before going to work.  He inserted the fully recharged LG HG2 18650 lithium-ion battery into the Sleeper V2 mechanical mod.  At that time there was no visible damage to the battery or its wrapping.  After putting flavored liquid into the atomizer he then pressed the firing button on the bottom of the mod to energize the atomizer.  When he did so his vaping device and the battery violently exploded in front of his face.

25.     The exploding vaping device and battery inflicted severe personal injuries upon Mr. Hall, including, but not limited to, shattering beyond repair nine (9) teeth and damaging his gums, necessitating emergency surgery to remove teeth fragments from his throat and mouth and to repair mouth and gum tissue, and later oral surgery for bone grafting to repair his lower gums and placement of five screws/dental implants in his upper gums and two screws/dental implants in his lower gums, which will be used in replacing his destroyed natural teeth with artificial teeth.  The explosion also caused Andrew Hall to experience severe pain and suffering, emotional distress and disfigurement, and prevented him from engaging in his usual activities, both at work and at home.

### Count I.
### Strict Liability in Tort against Checketts

26.     Halls incorporate the allegations contained in paragraphs 1-25 as if fully set forth herein.

27. As a manufacturer and seller of the Sleeper V2 mechanical mod and the seller of related components necessary for a working vape device, Checketts owed a duty of care to those using his products to ensure that they are not defectively designed, manufactured or marketed, making them unreasonably dangerous to those who use them.

28. Checketts breached his duties with regard to the Sleeper V2 mechanical mod, as he designed it to house a 18650 lithium-ion rechargeable battery, knowing that one or more of the manufacturers of such batteries expressly warn that their batteries are not compatible for use in e-cigarettes or other vaping devices, and failed to incorporate known safety features into the design of the Sleeper V2 mechanical mod so as to protect against the rechargeable battery from being over-discharged with normal use of the vaping device, thereby damaging the battery and making it susceptible to exploding violently.  Such acts and omissions include, but are not limited to, his failure to incorporate a protective circuit in the mod to protect the battery from over-discharging during normal use and his failure to adequately warn and instruct users of his vaping devices of the dangers associated with normal use of the Sleeper V2 mod with 18650 lithium-ion rechargeable batteries.

29. As a direct and proximate result of Checketts' breach of his duties as manufacturer and seller of the Sleeper V2 mechanical mod and seller of the related components, Mr. Hall sustained severe and painful personal injuries described in paragraph 25 above.  These injuries have resulted in permanent physical impairment and disfigurement, pain and discomfort, mental anguish and impediments for Mr. Hall to pursue his usual activities in the past and future, all to his general damage in the amounts to be established at trial.

30. As a direct and proximate result of Checketts' breach of duties, Halls incurred medical expenses in excess of $40,000 for Mr. Hall's initial hospitalization and medical care.

Mr. Hall is now undergoing procedures aimed at restoring his gums and teeth, the cost of which is estimated to be approximately $50,000. Additional medical and dental expenses are expected to be required in the future in the amounts to be proved at trial. Plaintiffs seek to recover all economic losses and special damages, past and future, incurred and to be incurred, as a result of the subject incident in the amounts to be proven at trial.

### Count II.
### Negligence against Checketts

31.     Halls incorporate the allegations contained in paragraphs 1-25 as if fully set forth herein.

32.     As a manufacturer and seller of the Sleeper V2 mechanical mod and the seller of related components necessary for a working vaping device, Checketts owes a duty to exercise reasonable care in the planning, designing, manufacturing and marketing of his products to ensure that they are reasonably safe for his customers to use.

33.     Checketts breached his duty to exercise the degree of care which a reasonably prudent manufacturer or person would exercise under the circumstances by failing to incorporate known safety features into the design of the Sleeper V2 mod to protect its user from the battery being damaged by over-discharge and in failing to adequately warn and instruct users of his Sleeper V2 mods of the dangers associated with rechargeable lithium-ion batteries becoming damaged through over-discharge with normal or even light use of the vaping device and thereby becoming susceptible to exploding while the vaping device is being used in or near the user's mouth.

34.     As a direct and proximate result of the negligence of Checketts, Mr. Hall sustained the injuries set out in paragraph 25 and Halls sustained the damages set out in paragraphs 29 and 30 above.

## Count III.
## Breach of Express or Implied Warranty of Fitness for Particular Purpose against Checketts and Evaporated Tech

35.     Halls incorporate the allegations contained in paragraphs 1-25 as if fully set forth herein.

36.     The sales personnel, first for Checketts and latter for Evaporated Tech, expressly or impliedly warranted that 18650 lithium-ion rechargeable batteries from IMREN and LG were appropriate and reasonably safe for use in the Sleeper V2 mechanical mod.

37.     When purchasing the subject Sleeper V2 mechanical mod, re-buildable atomizer and the IMREN 18650 rechargeable batteries, Mr. Hall reasonably relied upon Checketts' sales staff's express or implied warranty of fitness for particular purpose set out in the preceding paragraph.

38.     When purchasing the subject LG HG2 18650 3000 mAh, 35 amp lithium-ion rechargeable battery, Mr. Hall reasonably relied upon Evaporated Tech's sales staff's express or implied warranty of fitness for particular purpose set out in the preceding paragraph.

39.     Checketts and/or Evaporated Tech breached their respective express or implied warranty of fitness for particular purpose because unprotected 18650 lithium-ion rechargeable batteries are not safe to use in the Sleeper V2 mechanical mod as the mod has no safety features to protect the battery from being damaged by over-discharging and LG designs its 18650 lithium-ion batteries for use only in packs of batteries, as opposed to individually, in electrical devices which have built-in protections against the batteries being damaged by over-discharge, over-charging, excessive current and temperature, all of which are lacking in the Sleeper V2 mechanical mod.

40.     As a direct and proximate result of Checketts and/or Evaporated Tech's breach of the express or implied warranty of fitness for particular purpose, Mr. Hall sustained the injuries set out in paragraph 25, and Halls sustained the damages set out in paragraphs 29 and 30.

### Count IV.
### Strict Liability in Tort against LG

41.     Halls incorporate the allegations contained in paragraphs 1-25 as if fully set forth herein.

42.     At all relevant times, Defendant LG was a "product seller" as that term is defined in I.C. 6-1401, *et seq.*

43.     The incident battery was a LG HG2 18650 battery designed, manufactured, and sold by LG.

44.     The incident battery was delivered to Mr. Hall without substantial change in the condition in which it was produced and distributed by LG.

45.     At all relevant times, LG designed, manufactured, and sold LG HG2 18650 lithium-ion rechargeable batteries with the knowledge that they were regularly purchased for and used as power sources for vaping devices that have no protection circuitry, battery management systems, and/or printed circuit boards.

46.     At the time it was produced and distributed by LG, the subject battery was defective in its design and/or manufacture and was unreasonably dangerous for its foreseeable uses.

47.     The subject battery was unreasonably dangerous for a number of reasons including, but not limited to: it was designed and manufactured without any form of internal temperature control or protection circuitry; it contained manufacturing defects rendering it unsafe for its foreseeable use; it failed to incorporate protection circuitry or to integrate other

safety devices to protect against overcurrent, over temperature, short circuit, or overload; it was designed and manufactured such that it failed to comply with generally accepted engineering safety standards for such products; and it was not accompanied by any warnings that it could be damaged from over-discharging.

48.     As a direct and proximate result of the defective and unreasonably dangerous design and/or manufacture of the subject battery, it failed catastrophically during its foreseeable and intended use which caused it to explode and rupture in Mr. Hall's hand and mouth causing the injuries described in paragraph 25 and the damages set out in paragraphs 29 and 30.

49.     The dangers associated with the use of the subject battery in this application outweigh its utility, and the foreseeable risk of harm inherent in its design could have easily been reduced or avoided entirely by the incorporation of feasible, alternative designs available in the industry at the time the subject battery was manufactured.

### Count V.
### Strict Liability in Tort against Evaporated Tech

50.     Halls incorporate the allegations contained in paragraphs 1-40 as if fully set forth herein.

51.     Evaporated Tech made express warranties about the design and suitability of the LG HG2 18650 lithium-ion rechargeable battery for use in the Sleeper V2 mechanical mod that were inconsistent with those made by LG.

52.     Based on the foregoing, Evaporated Tech is liable to Halls under the Idaho Product Liability Reform Act, I.C. § 6-1401, *et seq.* for the injuries and damages set out in paragraphs 25, 29 and 30.

## Count VI.
## Strict Liability in Tort against Innotel, Outlaw Vapor and Evaporated Tech

53.     The incident battery was imported into the United States by Innotel.  It was then sold and distributed by Innotel as a genuine LG HG2 18650 3000 mAh, 35 amp lithium-ion rechargeable battery to Outlaw Vapor, LLC, which then sold it to Evaporated Technology, LLC, which in turn sold the incident battery to Mr. Hall.

54.     After Mr. Hall suffered the injuries inflicted by the exploding battery as described in paragraphs Nos. 24 and 25 above, LG arranged for the incident battery to be examined and tested by representatives of Exponent Failure Analysis Associates ("Exponent").  Comparing its findings with information about LG's design and manufacturing process obtained from LG, Exponent concluded that the incident battery is not a product manufactured by LG.  Implicit in Exponent's conclusion is the assertion that the incident battery is a counterfeit battery.

55.     In the event that it is determined by the fact finder in this case that LG did not design and manufacture the incident battery, Innotel, Outlaw Vapor and Evaporated Tech will each be  jointly and severally liable to Halls for the injuries and damages set out in paragraphs 25, 29 and 30, pursuant to  I.C. § 6-1407(4)(a)-(c), as sellers of a defective and unreasonably dangerous product whose manufacturer is not known, and therefore is not subject to process in Idaho courts, or is  insolvent or not otherwise capable of satisfying any judgment entered against it for the injuries and damages suffered by Halls.

## Count VII.
## Loss of Consortium

56.     Halls incorporate the allegations contained in paragraphs 1-55 as if fully set forth herein.

57.    As a direct and proximate result of the fault of all or some of defendants and the resulting severe and permanent injuries suffered by her husband, Airelle Hall has suffered and will continue to suffer a loss of consortium, all to her general damage in the amount to be proven at trial.

### Claim for Attorney Fees

58.    The fault of all or some of the defendants has necessitated Plaintiffs retaining counsel to bring this action.  Pursuant to I.C. §12-121, Plaintiffs should receive an award of reasonable attorney fees incurred in prosecuting this action.

WHEREFORE, Plaintiffs request entry of judgment against Defendants, jointly and severally, follows:

A.    For an award of general damages, past and future, sustained by Mr. Hall in the amounts proved at trial;

B.    For an award of economic damages incurred and to be incurred by Halls in the amounts proved at trial;

C.    For an award of general damages, past and future, sustained by Airelle Hall in the amounts proved at trial;

D.    For an award of costs incurred in prosecuting this action;

E.    For an award of reasonable attorneys fees pursuant to I.C. §12-121; and

F.    For such other and further relief as the Court deems equitable.

DATED this 27 day of November, 2017.

RACINE, OLSON, NYE & BUDGE,
CHARTERED

By: _____
BRENT O. ROCHE

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Idaho Rules of Civil Procedure, Plaintiffs request a trial by a 12-person jury on all issues.

DATED this *27* day of November, 2017.

RACINE, OLSON, NYE & BUDGE,
CHARTERED

By:_____
BRENT O. ROCHE

Exhibit B

Pocatello, Idaho 83204
208-235-1835
canthony@farmersagent.com

March 12, 2015

RE: Insurance Coverage

Logan:

Per my conversation with Kim Miller (Underwriter at Big Sky Underwriters) on 03/9/15. The ejuice portion of your business is covered for liability and property coverage.
If you have any further questions, please call me at 208-235-1835.

Regards

Chuck Anthony
Anthony Agency



US POSTAGE PITNEY BOWES

$ 008.05

ZIP 83702
02 4W
0000359178 SEP 10 2019

FIRST CLASS

CERTIFIED MAIL

7016 1370 0000 2332 1550

STATE OF IDAHO
DEPARTM
P.O. Box 83720
Boise, Idaho 83720-0043

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY
ATTN: MICHAEL H. LANZA
40 WANTAGE AVENUE
BRANCHVILLE, NJ 07890